**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

WILLIAM TERRENCE CROSS,

      Petitioner,

   v.                            **CIVIL ACTION NO. 2:06CV457**
                                     **[ORIGINAL CRIMINAL NO. 2:03CR10]**

UNITED STATES OF AMERICA,

      Respondent.

## OPINION

    This matter comes before the court on the following motions filed by Petitioner William Terrence Cross ("Cross"): (1) a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence; (2) a motion for an evidentiary hearing; (3) a motion to appoint counsel for the hearing; and (4) a motion to amend the motion for an evidentiary hearing. For the reasons set forth below, the court rules as follows: the motion to amend is **GRANTED**; the § 2255 motion is **DENIED**; the motion for an evidentiary hearing, as amended, is **DENIED**; and the motion to appoint counsel for that hearing is **DENIED** as moot.

## I.  Factual And Procedural History

### A.  Factual History

    The facts of this case have already been described in published opinions of the Fourth Circuit and this court. See United States v. Cross, 371 F.3d 176 (4th Cir. 2004); United States

v. Cross, 258 F. Supp. 2d 432 (E.D. Va. 2003).  Additional details are provided in this Opinion to assist the reader in understanding Cross's arguments.

On July 11, 2002, Nichelle Lewis ("Lewis") informed officers of the City of Suffolk Police Department that her boyfriend, Antoine Goodman ("Goodman"), was keeping drugs and firearms in the apartment she shared with him.  That same day, the police obtained a warrant authorizing them to search the apartment and its curtilage, and recovered firearms from the apartment and cocaine from a vehicle parked behind the apartment.  A warrant for Goodman's arrest was issued, but Goodman, who is Cross's nephew, remained at large for nearly four months.

After the police recovered the cocaine on July 11, 2002, Lewis traveled with investigator Marcus Young of the City of Suffolk Police Department ("Investigator Young") to police headquarters so that the police could question her further.  Along the way, with Lewis riding in the front passenger seat, Investigator Young's vehicle drove past Cross, who was walking towards the vehicle alongside the street on which it was traveling.  According to Investigator Young, this afforded Cross a clear view of the front passenger seat.  He noticed that Cross stopped suddenly and then ducked into a nearby phone booth.  The police subsequently took Lewis and her son to a hotel, where they stayed that night.  She and her son spent the following night at a shelter.  According to

2

Thomasine Lewis, Lewis's mother, Cross attempted unsuccessfully to ascertain Lewis's whereabouts from her at her workplace on July 12, 2002, and at her home on July 13, 2002.

On the night of August 9, 2002, Lewis attended a party at Nita Cherry's house in Suffolk, Virginia.  Lewis was accompanied by her aunt, Jacqueline Lewis ("Aunt Jackie"), and Tiffany Simms ("Simms").  Lewis and the others stayed there a few hours, and then, in the early morning hours of August 10, 2002, they traveled by automobile to the home of Anita Butler ("Butler") in Suffolk. After parking on a street near the home, they went inside for a short period of time.  Aunt Jackie left the home first to speak with a man who was already outside.  Lewis and Simms followed shortly thereafter.

According to Lewis and Simms, Cross approached Lewis as she was standing outside near Aunt Jackie and Simms.  Cross made the following statements to her: "I hope you got your life insurance and your son's life insurance paid up.  You going to testify against my nephew, I'm going to kill you, B, I'm going to kill you."  Cross proceeded to hit her in the face with his fist.  She fell, and he continued hitting and kicking her.

Lewis eventually was taken to a hospital and treated.  On two occasions, she was visited by a police officer at the hospital. Lewis does not recall the name of the first police officer that visited her.  The second police officer, Iris L. Davis ("Officer

Davis"), took pictures of Lewis and her clothing.  The photographs indicate that she had a knot on her head, a cut under her nose, and a scar on her leg, and that her clothing had blood in the chest area and on both legs.

The police eventually located and arrested both Cross and Goodman.  On February 5, 2003, Goodman pled guilty to a drug conspiracy charge, and was sentenced to 360 months imprisonment. This sentence reflected a drug conspiracy involving 23.1 kilograms of cocaine base.

**B.  Procedural History**

Cross was charged in the City of Suffolk with assault and battery on August 10, 2002, and obstruction of justice on August 13, 2002.  The City of Suffolk General District Court found Cross guilty of assault and battery on October 15, 2002.  Cross appealed.  Meanwhile, the charge of obstruction of justice was forwarded to a grand jury.

On December 18, 2002, the United States Attorney filed a criminal complaint, alleging that Cross had tampered with a witness in violation of 18 U.S.C. § 1512(b)(1).  A warrant for his arrest was issued, and a federal detainer was faxed to the City of Suffolk Circuit Court, where the state charges were pending.  On December 19, 2002, the state court dismissed the two state charges,

in accordance with section 19.2-294 of the Virginia Code.[1]  At that time, Cross was also facing revocation of probation, which he was serving as a consequence of a previous conviction in state court for malicious wounding.  The state court continued the probation revocation until January 27, 2003.  Cross remained in state custody.

On December 31, 2002, the federal arrest warrant was executed, and Cross was subsequently placed in federal custody.  On January 22, 2003, a federal grand jury charged Cross in a two-count indictment with tampering with a witness, in violation of 18 U.S.C. § 1512(b)(1) ("Count One"), and retaliating against a witness, in violation of 18 U.S.C. § 1513(b)(2) ("Count Two").  On April 29, 2003, a jury found Cross guilty on both counts.  On July 29, 2003, the court imposed concurrent sentences of 100 months imprisonment on Count One and 100 months imprisonment on Count Two.  Both parties appealed, with the United States challenging Cross's sentence, and Cross arguing that there was insufficient evidence to support his conviction.  On June 8, 2004, the Fourth Circuit affirmed summarily Cross's conviction, vacated his sentence, and remanded the case to this court for resentencing.  Cross, 371 F.3d at 182.  On November 22, 2004, this court resentenced Cross to

---

[1]Section 19.2-294 of the Virginia Code provides that "if the same act be a violation of both a state and a federal statute, a prosecution under the federal statute shall be a bar to a prosecution under the state statute."

consecutive sentences of 120 months on Count One and 48 months on Count Two.  Cross appealed, but the Fourth Circuit affirmed Cross's sentence in an unpublished decision on December 16, 2005.  See United States v. Cross, 159 F. App'x 484, 486 (4th Cir. 2005).

Between September 2, 2003, and June 13, 2006, Cross barraged this court with various motions, asking the court either to revisit prior rulings or to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  The court dismissed each of these motions as prematurely filed, or for other reasons.  Cross submitted the instant § 2255 motion on August 9, 2006, and the instant motion for an evidentiary hearing on August 11, 2006.  Both motions were filed subject to defect because they were not accompanied by a certificate of service.  On September 7, 2006, Cross filed a proper certificate of service.  On September 19, 2006, this court lifted the defects, ordered the motions filed, and ordered the United States to respond to Cross's motions.  The court received the United States' response on November 17, 2006.  That response was accompanied by the affidavit of Charles R. Burke ("Burke"), the attorney who represented Cross during his trial, original sentencing, first appeal, and resentencing.  After filing the § 2255 motion and the motion for an evidentiary hearing, Cross submitted various other briefs and affidavits in further support of the motions.  On December 4, 2006, he filed his motion to appoint counsel for the evidentiary hearing and motion to amend the motion

for an evidentiary hearing.  The matter is ripe for review.

## II.  28 U.S.C. § 2255

Section 2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255 (2000).  A proceeding under § 2255 is a civil collateral attack upon a judgment of conviction.  Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958).  Thus, the petitioner bears the burden of proof to establish by a preponderance of the evidence the claim upon which he seeks to have the judgment vacated, set aside, or corrected.  See id.

When a federal prisoner moves for relief pursuant to § 2255, the prisoner should be granted a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255.  However, because § 2255 motions are typically submitted to the judge who presided over the petitioner's trial and sentencing, "the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion."  Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).  Moreover, "[i]t is within the discretion of the district judge to deny without a hearing Section 2255 motions which

7

state only legal conclusions with no supporting factual allegations." Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970) (internal quotation omitted). "Allegations of 'a vague, conclusory or palpably incredible nature' do not raise factual issues which require a full hearing." Id. (quoting Machibroda v. United States, 368 U.S. 487, 495 (1962)).

### III. Analysis

Cross asserts the following claims in support of his § 2255 motion: (1) ineffective assistance of counsel; (2) actual innocence; (3) prosecutorial misconduct; and (4) false testimony by government witnesses. The court will address these claims in order.[2]

### A. Ineffective Assistance Of Counsel

Cross claims that he received ineffective assistance of counsel in violation of the Sixth Amendment. Cross alleges that his counsel was deficient in the following respects: (1) failure to ensure a fair trial; (2) failure to object to speedy trial violations; (3) failure to object to a violation of Federal Rule of

---

[2]Cross's motion to amend, which simply provides additional argument in support of his motion for an evidentiary hearing, is **GRANTED**. In evaluating the merits of Cross's § 2255 motion and his motion for an evidentiary hearing, the court has considered all of the motions, memoranda, affidavits, and briefs received from Cross between August 9, 2006, the date that Cross filed the § 2255 motion, and the date of this Opinion. The court will refer to these submissions collectively as "the § 2255 motion" or "Cross's § 2255 motion." Cross's numerous submissions essentially repeat the same arguments over and over with minor variations.

Criminal Procedure 5; (4) failure to subpoena witnesses; (5) failure to use impeachment evidence; (6) failure to investigate; (7) failure to object to double jeopardy; (8) failure to appeal; and (9) ineffective assistance with respect to sentencing issues.

There are two components to an ineffective assistance of counsel claim: deficient performance and prejudice. Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). An attorney's performance is deficient if it is not reasonable "under prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). The competency of an attorney "is measured against what an objectively reasonable attorney would have done under the circumstances existing at the time of the representation." Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996). Also, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. To establish prejudice, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If a petitioner fails to establish either deficient performance or prejudice, his claim fails and the court need not address the other component of the Strickland test. Id. at 697.

## 1.   Failure To Ensure A Fair Trial

Cross contends that Burke failed to ensure that Cross received a fair trial.  Cross explains that the government stated several times during his trial that Cross had shot Gregory Cooper ("Cooper") in 1992.  Cross contends that because it was never brought to his attention that Cooper would be mentioned at trial, he never had the opportunity to question jurors about whether they knew Cooper.  He states that two jurors may have known Cooper.  Burke's performance was allegedly deficient because he failed to move for a mistrial based on the government's references to Cross's wounding of Cooper.

At a threshold level, the court notes that the government's references to the Cooper shooting were permissible under the Federal Rules of Evidence.  At Cross's trial, he testified on his own behalf and revealed that he had been convicted of malicious wounding in 1992.  Trial Tr. at 124.  Burke subsequently called three character witnesses, Donna Melton, Virginia Lee Hope, and Heather VanArsdale, and each of these witnesses testified as to Cross's character for peacefulness.  See Trial Tr. at 175, 184-85, 190.  During cross-examination, the government asked these witnesses whether they knew that Cross had shot Cooper in 1992.  See Trial Tr. at 176, 187, 196.  Under such circumstances, it would have been futile for Burke to make an evidentiary objection to the government's questions.  See Fed. R. Evid. 405(a); see also United

10

States v. Adair, 951 F.2d 316, 319 (11th Cir. 1992) ("It is well settled that once a witness has testified about a defendant's good character, cross-examination inquiry is allowed as to whether the reputation witness has heard of particular instances of conduct relevant to the trait in question."); United States v. Wallach, 935 F.2d 445, 472 (2d Cir. 1991) (explaining that "the government is permitted to ask questions of character witnesses concerning their knowledge of specific instances of the defendant's conduct").

Cross cites United States v. Brown, 799 F.2d 134 (4th Cir. 1986), in support of his claim.  In Brown, the Fourth Circuit held that it was an abuse of discretion for a district court to refuse to ask prospective jurors during voir dire if they knew any of the government's witnesses.  Id. at 136.  That case, however, is inapposite here because Cooper was not a witness, and the government never had any intention of calling Cooper during its case-in-chief.

Cross's claim is somewhat analogous to a claim of juror bias or prejudice.  Cross is essentially alleging that his trial was unfair because two jurors developed a bias against him after learning that he had wounded Cooper, a man they allegedly knew. The court recognizes that it is appropriate under certain circumstances to conduct a hearing to allow a petitioner an opportunity to prove juror bias or prejudice.  See Smith v. Phillips, 455 U.S. 209, 215-16 (1982).  In this case, however, it

11

is clear that Cross is merely speculating that two jurors <u>may</u> have known Cooper.  Cross's allegations that his trial was unfair and that Burke's failure to move for a mistrial resulted in prejudice to him are nothing more than legal conclusions.  It is, therefore, appropriate for the court to reject his claim without conducting an evidentiary hearing to explore the matter further.  <u>See</u> <u>Raines</u>, 423 F.2d at 531.  Cross is **DENIED** relief on this ground of his ineffective assistance of counsel claim.

### 2.   Failure To Object To Speedy Trial Violations

#### a.   Pre-Indictment Delay

Cross also alleges that his counsel's performance was deficient because his counsel failed to object to a violation of his rights under the Speedy Trial Act, 18 U.S.C. §§ 3161-3174.[3] Pursuant to 18 U.S.C. § 3161(b), "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." This thirty-day limit can be triggered by "'any restraint resulting from federal action.'"  <u>United States v. Woolfolk</u>, 399 F.3d 590,

---

[3]On January 2, 2003, the court appointed the Office of the Federal Public Defender to serve as counsel for Cross.  Walter B. Dalton ("Dalton"), an Assistant Federal Public Defender, filed a notice of appearance on January 6, 2003.  On February 18, 2003, Dalton moved this court to withdraw as Cross's attorney.  On March 3, 2003, this court appointed Burke to replace Dalton.  In his § 2255 motion, Cross alleges that both Dalton and Burke performed deficiently in failing to bring the speedy trial issue to the court's attention.

596 (4th Cir. 2005) (quoting <u>United States v. Lee</u>, 818 F.2d 302, 305 (4th Cir. 1987)).  In <u>Woolfolk</u>, the Fourth Circuit explained that such a restraint occurs "when the Government has knowledge that an individual is held by state authorities solely to answer to federal charges."  <u>Id.</u>

If an indictment or information is not filed within the § 3161(b) time limit, the charge contained in the criminal complaint against that defendant "shall be dismissed or otherwise dropped."  18 U.S.C. § 3162(a)(1).  "In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice."  <u>Id.</u>

The state charges pending against Cross were dismissed on December 19, 2002.  From that point on, he appears to have been held in state custody solely to answer to federal charges.  Thirty-four days elapsed between December 19, 2002, and January 22, 2003, the date that the indictment was filed.  Cross alleges that the government knew that on December 19, 2002, after the state charges were dismissed, he was being held solely to answer to federal charges.  In light of the Fourth Circuit's decision in <u>Woolfolk</u>, it would appear that the government violated Cross's rights under the

13

Speedy Trial Act.  Of course, the court would need to hold an evidentiary hearing to determine whether Cross's factual allegations have merit.

Nevertheless, an evidentiary hearing is unnecessary because it is clear from the record that Cross cannot establish either deficient performance or prejudice, let alone both.  Cross cannot establish deficient performance because the competency of counsel is evaluated with respect to what an objectively reasonable attorney would have done under the circumstances existing at the time of the relevant events.  Savino, 82 F.3d at 599.  Cross makes his arguments with the benefit of hindsight.  Woolfolk was not decided until 2005, long after the alleged violation of his rights occurred.  The Woolfolk court relied on two earlier Fourth Circuit decisions, United States v. Lee, 818 F.2d 302 (4th Cir. 1987), and United States v. Iaquinta, 674 F.2d 260 (4th Cir. 1982), in which the Fourth Circuit noted in dicta that something less than an actual federal arrest and federal custody might suffice to trigger the thirty-day limit.  See Woolfolk, 399 F.3d at 596; Lee, 818 F.2d at 304; Iaquinta, 674 F.2d at 267.  This court, however, has been unable to locate even a single Fourth Circuit case that, prior to 2005, cited this reasoning from Lee or Iaquinta.  Indeed, many cases decided before Woolfolk strongly suggest that an actual federal arrest is required to trigger the Act's provisions.  See, e.g., United States v. Taylor, 240 F.3d 425, 427 (4th Cir. 2001)

14

(explaining that "since <u>Iaquinta</u>, this circuit has held that the time limits of the Act begin only after a federal arrest, not a state arrest"); <u>United States v. Thomas</u>, 55 F.3d 144, 148 (4th Cir. 1995) (citing extensively to <u>Lee</u> and holding that "the Speedy Trial Act was not implicated in this case until [the defendant] was either taken into federal custody on federal charges or indicted on those charges"); <u>United States v. Williamson</u>, 85 F. App'x 943, 944 (4th Cir. 2004) ("This Circuit has interpreted § 3161(b) to mean that the thirty-day time period does not begin to run until there is a federal arrest."); <u>United States v. Carter</u>, No. 89-5137, 1990 WL 2268, *1 (4th Cir. Jan. 9, 1990) (citing <u>Iaquinta</u> for the proposition that "[t]his circuit has interpreted section 3161(b) to mean that the 30-day time period does not begin to run until there is a federal arrest").  It is, therefore, clear to the court that at the time of the relevant events, an objectively reasonable attorney would not have recognized that a violation of Cross's rights had occurred.  Accordingly, the failure of Cross's counsel to raise the speedy trial issue was not deficient performance.

In any event, it is also clear that the failure of Cross's counsel to raise the speedy trial issue did not result in prejudice to Cross.  If his counsel had moved the court to dismiss the case against Cross, and persuaded the court that Cross's rights had been violated, the court would have had to decide whether to dismiss the case with or without prejudice after considering the factors set

15

forth in 18 U.S.C. § 3162(a)(1).  And it is clear from the record
that any dismissal would have been without prejudice.  The charges
against Cross were very serious.   In fact, Cross was ultimately
sentenced to 168 months imprisonment.  Moreover, the impact of a
reprosecution on the administration of the Speedy Trial Act, in
particular, and the administration of justice, in general, would
have been slight.  This case reflected a unique situation, and was
not likely to recur.  Also, at the time of the relevant events, the
Fourth Circuit had not precisely defined the contours of the right
in question.  <u>See</u> <u>Woolfolk</u>, 399 F.3d at 596 (noting that although
the <u>Lee</u> court stated that a restraint resulting from federal action
could trigger the provisions of the Speedy Trial Act, it did not
define "the parameters of this language").  Thus, to the extent
that the government's acts violated the Act, the violation was
likely inadvertent, rather than intentional.  Furthermore, the pre-
indictment delay exceeded the thirty-day limit by a mere four days.
Cross alleges that this delay not only allowed the government to
recruit additional witnesses, but also caused Cross to lose touch
with a potential defense witness.  But because the additional delay
in question was only four days, the court finds these allegations
palpably incredible and declines to explore the issue further at an
evidentiary hearing.  <u>See</u> <u>Raines</u>, 423 F.2d at 531.  In light of the
circumstances outlined above and the factors set forth under 18
U.S.C. § 3162(a)(1), it is clear to the court that any dismissal of

the case against Cross would have been without prejudice.
Therefore, it is clear from the record that counsel's failure to
seek a dismissal did not result in prejudice to Cross, and Cross is
**DENIED** relief on this ground of his claim.  See United States v.
Cook, 48 F. Supp. 2d 776, 777 (N.D. Ill. 1999) (denying an
ineffective assistance of counsel claim because even if a Speedy
Trial Act violation occurred, the § 2255 petitioner could not "show
the result of his proceedings would have been different (and thus
that he suffered prejudice)"); Milligan v. United States, No. 06-
54T26EAJ, 2006 WL 373012, *1-2 (M.D. Fla. Feb. 16, 2006)
(concluding that a § 2255 petitioner failed to establish prejudice
where he failed to show "a reasonable probability that the outcome
of the proceedings would have been different had his counsel moved
to dismiss the indictment").[4]  But see United States v. Palomba, 31

_____

[4]This court's conclusion also finds strong support in cases
involving ineffective assistance of counsel claims based on
purported failures of counsel to object to violations of other
provisions of the Speedy Trial Act, such as 18 U.S.C. § 3161(c).
See, e.g., United States v. Jackson, 22 F. App'x 396, 398 (6th Cir.
2001) (rejecting a defendant's ineffective assistance of counsel
claim where, although the failure to seek a dismissal deprived the
defendant of his right to request a dismissal with prejudice, the
defendant failed to show "a reasonable probability that the
district court would have dismissed the indictment with
prejudice"); United States v. Theurer, No. 93-3310, 1994 WL 420072,
*7 (7th Cir. Aug. 11, 1994) (rejecting a claim that counsel's
performance was ineffective where the defendant had not
demonstrated that "her attorney's failure to file the motion to
dismiss on Speedy Trial grounds had any adverse impact on the
fairness of her trial"); United States v. Matlock, No.
CRS920315GEBPANP, 2006 WL 306902, *4 (E.D. Cal. Feb. 8, 2006)
(concluding that a § 2255 petitioner failed to establish
ineffective assistance of counsel because "even if defendant had

F.3d 1456, 1466 (9th Cir. 1994) (finding deficient performance and prejudice where "[Speedy Trial Act] considerations were prominent enough in the pre-trial period to commend counsel's consideration of a Section 3162(a)(1) dismissal").

### b.  The Interstate Agreement On Detainers Act

Cross further alleges that he was held in violation of his rights under the Interstate Agreement on Detainers Act, which gives "a sentenced prisoner subject to a detainer the right to demand a prompt trial on the charges underlying the detainer, that is, a trial within 180 days." Woolfolk, 399 F.3d at 599; see 18 U.S.C. app. 2 § 2, art. 3.  In this case, the federal detainer was faxed to state court on December 18, 2002, or shortly thereafter.  Cross was found guilty by a jury on April 29, 2003, less than 180 days after December 18, 2002.  Thus, to the extent that Cross had rights under the Interstate Agreement on Detainers Act, his rights were not violated.  Because any failure of counsel to raise this issue did not result in prejudice to Cross, Cross's claim is **DENIED** as to this ground.

---

moved to dismiss, successfully, such dismissal would have been without prejudice to the government obtaining a new indictment, in light of the seriousness of the case, the lack of bad faith by the government concerning delay, and the public interest in the administration of justice to enforce drug laws"); see also United States v. Carreon, 626 F.2d 528, 533 (7th Cir. 1980) (concluding that a dismissal of an indictment without prejudice was proper where the crimes were serious, the defendant claimed no prejudice as a result of the delay, the government did not intentionally seek the delay, and the circumstances of the case were not likely to recur).

### c.  Sixth Amendment Right To Speedy Trial

In addition, Cross claims that the government violated his Sixth Amendment right to a speedy trial based on the delay between his August 2002 arrest on the state charge of assault and battery and his federal trial.  However, an "arrest on state charges does not engage the speedy trial protection for a subsequent federal charge."  United States v. Garner, 32 F.3d 1305, 1309 (8th Cir. 1994); see United States v. MacDonald, 456 U.S. 1, 10 n.11 (1982) ("Of course, an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign.").  Rather, where federal charges are brought after an arrest on a state charge, the Sixth Amendment's speedy trial protections are triggered by the combination of a federal complaint, a federal arrest warrant, and a federal detainer.  See Woolfolk, 399 F.3d at 597.  Cross's Sixth Amendment right to a speedy trial was, therefore, not implicated until on or about December 18, 2002, when the federal detainer was faxed to state court.  The delay of less than five months between December 18, 2002, and the conclusion of Cross's jury trial on April 29, 2003, does not constitute a Sixth Amendment violation. See, e.g., United States v. Camden, 177 F. App'x 272, 273-74 (4th Cir. 2006) (holding that a defendant's Sixth Amendment right to a speedy trial was not violated where the delay between the defendant's initial appearance and his trial was less than six

months).   Accordingly, his counsel's failure to raise this issue did not prejudice Cross, and Cross is **DENIED** relief on this ground of his ineffective assistance of counsel claim.

### 3.   Failure To Object To A Violation Of Rule 5

Cross also claims that his counsel's performance was deficient because his counsel failed to object to a violation of his rights under Federal Rule of Criminal Procedure 5.   Cross explains that, beginning on December 19, 2002, he was held in state custody solely for the purpose of answering to a federal charge.   He alleges that he was not apprised of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), or brought before a magistrate judge for his Rule 5 initial appearance within seventy-two hours of this date. Cross contends that Burke should have moved for dismissal of the case against him based on these facts.   He also argues that the delay in bringing him before a magistrate judge resulted in prejudice to him.

Pursuant to Rule 5(a)(1)(A), "[a] person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge, or before a state or local judicial officer."   However, where a delay "does not result in unwarranted interrogation, no prejudice results, and any violation of Rule 5(a) does not require dismissal of the indictment."   United States v. Lawson, 153 F. App'x 209, 211 (4th Cir. 2005); see United States v. Neiswender, 590 F.2d 1269, 1271-72

(4th Cir. 1979) (refusing to adopt dismissal of an indictment as a remedy for, among other things, purported violations of a defendant's rights under Rule 5(a)).   "[T]he federal courts have held that the mere fact that the accused was detained without being taken before a committing authority with reasonable promptness does not void a conviction based upon competent evidence."   <u>Tarkington v. United States</u>, 194 F.2d 63, 67 (4th Cir. 1952).

In this case, even assuming for the sake of argument that the government violated Cross's rights under Rule 5(a), Cross's ineffective assistance of counsel claim must fail.   Cross does not allege that unwarranted interrogation occurred during the period of delay at issue.   Thus, even if his counsel had brought the Rule 5(a) issue to the court's attention, the court would not have dismissed the case against Cross.   See <u>Lawson</u>, 153 F. App'x at 211.[5]

Cross contends, somewhat confusingly, that if he had received a prompt hearing before a magistrate judge, he would have moved this court, either proceeding pro se or with the assistance of a

---

[5]Of course, it also would have been futile for counsel to argue that Cross's <u>Miranda</u> rights were violated.   The failure of the police to apprise Cross of these rights does not in and of itself provide a basis for relief.   Rather, under <u>Miranda</u>, "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." <u>Miranda</u>, 384 U.S. at 444.   Because this case does not involve the use of statements stemming from custodial interrogation, <u>Miranda</u> is inapposite here.

court-appointed attorney, to dismiss the case against him based on purported violations of the Speedy Trial Act.  See supra Part III.A.2.a.  But Cross failed to make such a motion, even after making his initial appearance before the magistrate judge on January 3, 2003.  The court cannot fathom, and Cross does not explain, why making an earlier appearance before the magistrate judge would have made it more likely that Cross would have moved for dismissal of the case against him.  Cross obviously had ample opportunity to make such a motion, but he failed to do so.  In any event, the court would not have dismissed with prejudice the case against Cross based on the purported violation of his rights under the Speedy Trial Act.  See id.  In other words, it is clear from the record that his counsel's failure to move for dismissal of the case against him based on the purported violation of Rule 5(a), or to bring the Rule 5(a) issue to the court's attention in some other manner, did not result in prejudice to Cross.  Accordingly, Cross's claim is **DENIED** with respect to this particular ground.

### 4.   Failure To Subpoena Witnesses

Cross contends that he received ineffective assistance of counsel because Burke failed to subpoena various witnesses.  He explains that he has a right to compulsory process under the Sixth Amendment.  Cross alleges that there is a reasonable probability that the outcome of his case would have been different if his counsel had not failed to subpoena the following witnesses: Butler,

Luvenia Ross ("Ross"), Peggy Clark ("Clark"), an unnamed police officer, Gregory Robinson ("Robinson"), Dee Boyette ("Boyette"), Georgia Mae Redding ("Redding"), and Officer White.[6]

A district court has discretion to deny a § 2255 motion without a hearing if the motion merely states legal conclusions or factual allegations of a vague, conclusory, or palpably incredible nature.  See Raines, 423 F.2d at 531; see, e.g., Mackins v. United States, No. 04-510, 2006 WL 20395, *4 (W.D.N.C. Jan. 4, 2006).  The Fourth Circuit has held that "an allegation of inadequate investigation [of witnesses] does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."  Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996) (affirming a district court's decision to deny a petition under 28 U.S.C. § 2254 without a hearing); see Mackins, 2006 WL 20395, at *4 (requiring a proffer of evidence in a § 2255 case involving a claim of ineffective assistance based on counsel's failure to subpoena witnesses).  A reviewing court should view a claim of ineffective assistance of counsel based on a failure to subpoena witnesses with "great caution" where, as here, the petitioner does not provide the court with any affidavits from the potential witnesses.  Sayre v.

---

[6]According to Burke, "[a]s best recalled, the witnesses intended for trial were: Dorothy BIVINS, Travis BOYKINS, Bryant DIXON, Antoine L. GOODMAN, Lloyd HOLLAND, Jr., James F. HOPE, Virginia L. HOPE, Jacqueline A. LEWIS, Donna MELTON, Cathlene PITTMAN, Heather VANARSDALE.  These witnesses were reviewed with Petitioner and no others were contemplated."  Burke Aff. at 3.

Anderson, 238 F.3d 631, 636 (5th Cir. 2001) (explaining in a case arising under 28 U.S.C. § 2254 that "[w]here the only evidence of a missing witness's testimony is from the defendant, this Court views claims of ineffective assistance with great caution").

### a.  Butler, Ross, Clark, And The Unnamed Police Officer

Some additional factual background is required to understand Cross's allegations with respect to Butler, Ross, Clark, and the unnamed police officer.  Cross testified at his trial and described the events that transpired in the early morning hours of August 10, 2002.  Cross alleged that Lewis, who had been drinking, approached him and asked why he had not told her that Goodman had been cheating on her.  Cross eventually turned to walk away from her, but Lewis grabbed him and yanked his shirt.  As he twisted, he hit her in the head with his elbow.  See Trial Tr. 135-36.

This testimony obviously conflicted with Lewis's version of events.  Not only did Lewis testify that Cross was the aggressor in the altercation, but she also testified that she did not have anything to drink prior to the events in question.  See Trial Tr. at 47 ("I don't drink.").  Aunt Jackie, a government witness, corroborated much of Lewis's testimony, but stated during cross-examination that Lewis had something to drink at Nita Cherry's house.  Trial Tr. at 81.  Burke did not ask Aunt Jackie whether Lewis was drunk or how many drinks Lewis had prior to the relevant events.  Simms, another government witness, testified that Lewis

did not have any drinks on the night and early morning in question. Trial Tr. at 88.

In his § 2255 motion, Cross alleges that the testimony of Butler, Ross, Clark, and the unnamed police officer would have persuaded the jury that Lewis had been drinking prior to the assault.  He explains that if the jury had recognized that Lewis was lying when she testified that she had not been drinking, the jury would have been less likely to believe the other parts of Lewis's story.

Cross alleges that Butler could have testified regarding whether Lewis had anything to drink at Butler's house.  Cross has not provided an affidavit from Butler, and does not affirmatively state that Butler would have testified that Lewis <u>was</u> drinking at Butler's house.   In the absence of such a proffer, Cross's allegation is merely speculation, and the court need not consider it further.  <u>See Raines</u>, 423 F.2d at 531; <u>Beaver</u>, 93 F.3d at 1195.

Turning to Ross, Cross alleges that this potential witness could have testified that Lewis jumped at her at the hospital on the morning of August 10, 2002, thereby providing evidence of Lewis's purported intoxication.   Cross has not submitted an affidavit from Ross.  In any event, even if Lewis jumped at Ross at the hospital, many explanations would exist for such behavior. Indeed, it would have been perfectly consistent with Lewis's version of events for Lewis to have been in an extremely agitated

25

state at the hospital.  After all, according to Lewis, Cross had just beaten her and threatened the life of both her and her son. In light of this fact, the potential value of Ross as a witness in Cross's case would have been slight.  It is clear from the record that any failure of Burke to subpoena Ross did not result in prejudice to Cross.

Finally, Cross alleges that Clark and the unnamed police officer also observed Lewis's actions at the hospital, and that these witnesses, like Butler and Ross, could have helped to establish that Lewis was intoxicated at the time of the alleged assault.  Again, Cross has not provided affidavits from these potential witnesses.  Moreover, he does not describe what actions these witnesses observed, and does not even provide the name of the police officer.  Thus, Cross's allegations are merely conclusory assertions, and the court declines to explore them further at an evidentiary hearing.  See Raines, 423 F.2d at 531.  Cross's ineffective assistance of counsel claim is **DENIED** to the extent it is based on Burke's purported failure to subpoena Butler, Ross, Clark, and the unnamed police officer.

### b.  Robinson

Cross explains that Robinson could have described the following events at trial.  On July 13, 2002, Thomasine Lewis came to Robinson's house with mail looking for Goodman, who she thought lived there.  She told Robinson to give the mail to Cross if he saw

him, and noted that she had not seen Cross in some time.  Cross alleges that this statement would have contradicted the testimony of Thomasine Lewis, because Thomasine Lewis stated at trial that Cross was at her house looking for Lewis that same day.[7]

The problem with Cross's claim is that Thomasine Lewis's testimony was corroborated at trial by two government witnesses, namely, Cynthia Teel and Cynthia Green.  Cynthia Teel testified that she was present when Cross attempted to ascertain Lewis's whereabouts from Thomasine Lewis on July 13, 2002.  Trial Tr. at 66-68.  Cynthia Green testified that she was present when Cross attempted to ascertain Lewis's whereabouts from Thomasine Lewis on July 12, 2002, at Thomasine Lewis's place of employment.  See Trial Tr. at 72-73.  In light of this strong corroboration, it is clear from the record that there is not a reasonable probability that, but for the purported error, the result of the proceeding would have been different.  Accordingly, any error of Burke in failing to subpoena Robinson did not result in prejudice to Cross, and Cross cannot establish ineffective assistance of counsel on this ground.

### c.  Boyette and Redding

Cross alleges that Simms, a government witness who was a friend of Boyette's daughter, told Boyette that she was lying when she told the police that Cross had started the altercation with

---

[7]Thomasine Lewis testified that Cross attempted to ascertain Lewis's whereabouts from her on both July 12, 2002, and July 13, 2002.  See Trial Tr. at 57-60.

Lewis.[8]   Cross received this information from Boyette during a three-way phone call that also included Redding.  Cross asserts that he asked Burke to investigate and subpoena Boyette and Redding, but that Burke declined to do so.

Cross has not submitted an affidavit from either Boyette or Redding.  Also, he does not provide any details about when, where, or how Simms communicated the fact that she had lied to the police.  In addition, he does not indicate when the alleged three-way phone call occurred, or where Boyette and Redding were located when it occurred.  In other words, Cross's assertions lack any indicia of reliability.  In light of these circumstances, the court finds these allegations vague and, to the extent they are not vague, palpably incredible.  The court declines to explore the issue further at an evidentiary hearing, and Cross's ineffective assistance claim is **DENIED** as to this ground.

### d.  Officer White

Cross alleges that Burke's performance was deficient because he failed to subpoena Officer White, who was present in the vehicle that transported Lewis to the police station on July 11, 2002.  Cross explains that Officer White could have testified that a member of the public would not have recognized the vehicle as a police vehicle, and that the vehicle had tinted windows.  Thus,

---

[8]It is not precisely clear from Cross's motion whether Simms made the alleged statement to Boyette or to Boyette's daughter.

contrary to the testimony of Investigator Young, who was also in the vehicle, Cross could not have seen Lewis in the vehicle and recognized that she was cooperating with police in the Goodman investigation on July 11, 2002.

Again, Cross has not provided an affidavit from Officer White. And it is clear that when Cross states that Office White <u>could</u> <u>have</u> testified regarding the identity of the vehicle, he is merely speculating that Office White might have provided information favorable to his case.   Furthermore, the court notes that the testimony of other witnesses at trial strongly indicated that Cross was looking for Lewis.   <u>See, e.g.</u>, Trial Tr. at 66-68, 72-73. This, in turn, corroborated the fact that Cross knew Lewis was cooperating with the police in the Goodman investigation. Accordingly, Cross's ineffective assistance claim is **DENIED** as to this ground.

### 5.   Failure To Use Impeachment Evidence

Burke's performance was also purportedly deficient because of his failure to use certain impeachment evidence.   First, Cross directs the court's attention to a police report indicating that Lewis initially told the police that she, Aunt Jackie, and Simms were in Butler's house for about an hour.   Cross notes that this evidence could have been used to impeach Lewis, because Lewis testified at trial that she was only in Butler's house for "like five minutes."   Trial Tr. at 47-48.   Second, Cross directs the

court's attention to a police report indicating that Simms initially stated to the police that Cross approached Lewis on August 10, 2002, with his hands behind his back.  Cross explains that this evidence could have been used to impeach Simms at trial, because Simms testified that Cross was hitting his hands together, with one hand in a fist, as he approached Lewis.  See Trial Tr. at 92.  Third, Cross asserts that Lewis indicated, while under oath, to Officer White that Cross had approached her at her home a few days after July 11, 2002.[9]  Cross contends that this statement conflicted with Lewis's trial testimony, because she allegedly indicated at trial that she was not living at home on that date. Fourth, and finally, Cross alleges that Lewis testified in state court on October 15, 2002, that she saw Cross inside of Butler's house, presumably on August 10, 2002.  Cross alleges that this prior statement could have been used to impeach Lewis at trial.

Having thoroughly reviewed the record, it is clear to the court that Burke's failure to use the evidence described by Cross did not prejudice Cross's defense.  For example, although Lewis may have initially told the police that she was in Butler's house for about an hour, the discrepancy between this statement and her trial

---

[9]Although Cross has provided what is purported to be the relevant pages of police reports with respect to his first two allegations, he has not directed the court's attention to any documents containing this alleged prior statement of Lewis.  The court has been unable to find a document containing the statement in the record.

testimony was of a very minor nature.  The discrepancy between
Simms's trial testimony and her prior statement was similarly of a
very minor nature.  The key part of Simms's testimony was her
corroboration of Lewis's testimony that Cross was the aggressor in
their altercation, and that he beat and threatened Lewis.  Also,
Lewis's prior statement that Cross had approached her a few days
after July 11, 2002, would have had very limited impeachment value
because it was not inconsistent with her trial testimony.  <u>See</u>
<u>infra</u> Part III.C.3.  Finally, Lewis's prior statement that she saw
Cross inside of Butler's house, presumably on August 10, 2002,
would have had little or no value as impeachment evidence in light
of the fact that Lewis never testified that she did not see Cross
there.  Thus, it is clear from the record that there is not a
reasonable probability that, but for the purported error, the
result of the proceeding would have been different.  To the extent
that Burke's failure to use this impeachment evidence constituted
deficient performance, that error did not result in prejudice to
Cross.  Accordingly, this part of Cross's claim must fail.

### 6.   **Failure To Investigate**

Cross also avers that Burke's performance was deficient
because he failed to investigate the identity of the police vehicle
that transported Lewis to the police station on July 11, 2002.
Cross explains that the testimony of Investigator Young led the
jury to mistakenly believe that Cross saw Lewis on that day sitting

in the front passenger seat of a known police vehicle.  He further explains that had Burke properly investigated the matter, Burke would have learned the vehicle was actually Investigator Young's personal vehicle, an unmarked Ford with tinted windows.  Cross essentially argues that if the jury had known of this fact, they would have recognized that Cross had no reason to think Lewis was cooperating with police, and thus no reason to assault and threaten her.

Cross fails to establish ineffective assistance of counsel on this ground for two reasons.  First, it is entirely unclear what is the source of Cross's information.  Cross had made no proffer of evidence.  He alludes to the fact that Officer White <u>could</u> <u>have</u> testified regarding the vehicle, but he does not make any affirmative statement that indicates Officer White would, in fact, have testified that the vehicle in which Lewis traveled on July 11, 2002, was Investigator Young's personal vehicle.  In the absence of such a proffer, the court may deny a petitioner's claim without holding an evidentiary hearing to consider the matter further.  <u>See</u> <u>Beaver</u>, 93 F.3d at 1195; <u>United States v. Ilodi</u>, 982 F. Supp. 1046, 1048 (D. Md. 1997) (holding that "a defendant's allegation that his attorney conducted an inadequate investigation does not warrant relief absent a proffer of what favorable testimony the witness or witnesses would have given").  Second, there was other evidence presented at trial indicating that Cross was looking for Lewis.  In

particular, the testimony of Lewis clearly showed that Cross had knowledge of Lewis's cooperation with the police.  <u>See</u> Trial Tr. at 33.  Thus, it is clear from the record that any error of Burke in failing to investigate the matter did not result in prejudice to Cross, and Cross's ineffective assistance claim is **DENIED** as to this ground.

### 7.   Failure To Object To Double Jeopardy

Cross also alleges that the Double Jeopardy Clause of the federal constitution barred the government from bringing federal charges against him, and that his counsel was deficient in failing to bring this issue to the court's attention.  Cross explains that he was convicted in a general district court in Virginia on October 15, 2002, for assault and battery based on the same acts that formed the basis for his subsequent conviction on federal charges.  Cross appealed his conviction on the state charge, and a de novo jury trial was scheduled to take place in a Virginia circuit court.  Before this trial occurred, the state prosecutors dismissed the state charges against Cross.

The Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  But "federal and state crimes are not the same offense, no matter how identical the conduct they proscribe."  <u>United States v. Alvarado</u>, 440 F.3d 191, 196 (4th Cir. 2006).  Thus, Burke's failure to raise the issue of double jeopardy

did not result in prejudice to Cross.  Cross's claim is **DENIED** as to this ground.

### 8.   Failure To Appeal

This part of Cross's ineffective assistance of counsel claim essentially asks the court to revisit the Opinion and Order of April 15, 2003, in which the court denied Cross's motion to dismiss for lack of jurisdiction.  See United States v. Cross, 258 F. Supp. 2d 432, 432 (E.D. Va. 2003).  Cross explains that he asked Burke to appeal the court's ruling, but Burke did not honor his request.  He alleges that Burke, therefore, acted in violation of the requirements of Anders v. California, 386 U.S. 738 (1967).  Cross also contends that because Burke failed to make a timely motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, Burke failed to preserve his right to argue on appeal that there was insufficient evidence to support his conviction.  Cross apparently believes that Burke's failure to make such a motion precluded Cross from raising the issue of jurisdiction on appeal. Finally, he argues that the testimony of Gary Parker ("Parker"), a government witness, at Cross's trial on April 29, 2003, conflicted with the testimony Parker provided at the April 3, 2003 hearing, which was held to address Cross's motion to dismiss for lack of jurisdiction.  He essentially argues that in light of Parker's testimony on April 29, 2003, it is clear that federal jurisdiction was lacking in this case.

34

The Supreme Court has explained that <u>Anders</u> requires an appointed attorney to "advocate his client's cause vigorously." <u>Jones v. Barnes</u>, 463 U.S. 745, 749 (1983).  It has further explained that neither <u>Anders</u> nor any other decision of the Supreme Court suggests "that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." <u>Id.</u> at 751.  Where appellate counsel makes an informed decision based on reasonable professional judgment not to pursue particular issues on appeal, the failure to raise one of these issues on appeal does not constitute deficient performance.  <u>Griffin v. Aiken</u>, 775 F.2d 1226, 1235 (4th Cir. 1985).

At a threshold level, the court notes that it would have been futile for Burke to attempt to appeal the Opinion and Order of April 15, 2003.  The judgment in a criminal case becomes final after the defendant is convicted and sentenced, and interlocutory appeals are strongly disfavored.  <u>United States v. Bundy</u>, 392 F.3d 641, 645 n.1 (4th Cir. 2004).  The court further notes that although Burke did not raise the issue of jurisdiction on appeal, Burke did file a notice of appeal in this case after final judgment was entered.  Thus, cases dealing with a defense attorney's failure to file a notice of appeal after final judgment are inapposite here.  <u>See, e.g.</u>, <u>Campusano v. United States</u>, 442 F.3d 770, 773 (2d

Cir. 2006) (explaining that prejudice is presumed where defense counsel fails to file a requested notice of appeal).

It is not clear from the record whether Burke made an informed decision not to raise the issue of jurisdiction on appeal.[10]  Thus, an evidentiary hearing would be necessary to determine whether Burke's failure to raise the issue constituted deficient performance.  It is unnecessary, however, to hold a hearing because, as discussed further below, it is clear that Burke's failure to raise the issue of jurisdiction on appeal did not result in prejudice to Cross.

In his motion to dismiss, Cross argued that both 18 U.S.C. § 1512(b)(1), witness tampering, and 18 U.S.C. § 1513(b)(2), retaliating against a witness, require a federal nexus to establish federal jurisdiction.  See Cross, 258 F. Supp. 2d at 432.  One element of 18 U.S.C. § 1512(b)(1) is an "intent to . . . influence, delay, or prevent the testimony of any person in an official

---

[10]The court notes that the failure of Burke to make a motion under Rule 29 did not preclude Cross from raising the issue of jurisdiction on appeal.  New Horizon of NY LLC v. Jacobs, 231 F.3d 143, 150 (4th Cir. 2000) ("Lack of subject matter jurisdiction may be raised at any time by the parties or the court.").  Thus, to the extent Burke erred in declining to raise the issue of jurisdiction on appeal, his failure to make a Rule 29 motion was not part of that error.  The court also notes that there was sufficient evidence to support Cross's conviction.  See United States v. Cross, 371 F.3d 176, 178 n.1 (4th Cir. 2004) (concluding that "the evidence was clearly sufficient to sustain the jury's guilty verdict and we summarily affirm Cross's convictions").  Accordingly, it is clear that the failure of Burke to make a motion under Rule 29 did not result in prejudice to Cross.

proceeding."   An "official proceeding" includes "a proceeding before a judge or court of the United States, a United States magistrate judge, . . . or a Federal grand jury."   18 U.S.C. § 1515(a)(1)(A).   The official proceeding "need not be pending or about to be instituted at the time of the offense."   18 U.S.C. § 1512(e)(1) (2000) (now codified at 18 U.S.C.A. § 1512(f)(1) (West Supp. 2006)).   The government need not prove the defendant's state of mind with respect to the circumstance that the official proceeding is before a judge or court of the United States, or a federal grand jury.  18 U.S.C. § 1512(f)(1) (2000) (now codified at 18 U.S.C.A. § 1512(g)(1) (West Supp. 2006)).

Similarly, one element of 18 U.S.C. § 1513(b)(2) is an "intent to retaliate against any person for . . . any information relating to the commission or possible commission of a Federal offense . . . given by a person to a law enforcement officer."   The term law enforcement officer includes "a person authorized to act for or on behalf of the Federal Government or serving the Federal Government as an advisor or consultant."  18 U.S.C. § 1515(a)(4).

In the Opinion and Order of April 15, 2003, the court first addressed whether a federal nexus existed with respect to the witness tampering charge.  See Cross, 258 F. Supp. 2d at 434-35. The court concluded that the requisite nexus was present because Lewis was a witness in a federal investigation at the time of the alleged assault, and the investigation eventually resulted in the

government bringing federal charges against Goodman.  Id. at 435.
The court next turned to the issue of whether the requisite federal
nexus was present with respect to the charge of retaliating against
a witness.  Id.  The court explained that Parker, as an agent of
the federal Drug Enforcement Agency ("DEA") task force, had
interviewed Lewis prior to the alleged assault, and Parker was
authorized to act for, or on behalf of, the federal government.
Id.  Accordingly, the jurisdictional criteria for this charge were
satisfied.  Id.

At Cross's trial, Parker's testimony confirmed each of the
facts relied on by the court in the Opinion and Order.  See Trial
Tr. at 112-19.  Also, the Fourth Circuit has not had occasion to
interpret the relevant statutory provisions since the Court issued
the Opinion and Order.  Thus, neither the factual basis nor the
legal basis for the court's decision has changed.  Federal
jurisdiction was not lacking in this case, and Burke's decision not
to raise this issue on appeal did not result in prejudice to Cross.
Thus, it is clear from the record that Cross is not entitled to
relief on this ground of his ineffective assistance of counsel
claim.

### 9.   Ineffective Assistance With Respect To Sentencing

Cross contends that he received ineffective counsel at
sentencing and resentencing.  First, Cross asserts that because of
Burke's deficient performance at sentencing and resentencing, he

was ultimately resentenced under section 2X3.1(a) of the sentencing guidelines.  It is necessary to briefly review Cross's resentencing in order to understand this claim.  In resentencing Cross, this court applied the 2001 version of the sentencing guidelines.  Under guidelines section 2J1.2(a), the base offense level corresponding to Cross's offenses was twelve.  Cross received an eight-level enhancement pursuant to section 2J1.2(b)(1), because his offense involved causing or threatening to cause physical injury to a person in order to obstruct the administration of justice.  At this point, Cross's offense level under section 2J1.2(a) and (b) was twenty.

In committing the instant offense, however, Cross attempted to obstruct the investigation and prosecution of a criminal offense, namely, the drug conspiracy to which Goodman pled guilty in February 2003.  Thus, in accordance with section 2J1.2(c)(1), the court also determined Cross's offense level as an accessory after the fact to the underlying drug conspiracy by applying section 2X3.1.  Because the underlying drug conspiracy involved about 23.1 kilograms of cocaine base, Cross's offense level under section 2X3.1 was thirty.  See U.S. SENTENCING GUIDELINES MANUAL §§ 2X3.1, 2D1.1(a), (c) (2001).  This offense level was greater than the offense level of twenty determined using section 2J1.2(a) and (b).  Accordingly, the court used the offense level of thirty to determine the appropriate sentencing guidelines range for Cross.

See id. § 2J1.2(c)(1).

Cross argues that section 2X3.1 should not have applied because his indictment did not list the quantity of drugs involved in the underlying drug conspiracy. In the alternative, he contends that his sentence should have reflected an underlying drug conspiracy involving 48.9 grams, not 23.1 kilograms, of cocaine base. He explains that the police recovered only 48.9 grams of cocaine base from Goodman's apartment, and the government's proof at trial did not establish that any additional quantities of drugs were involved in the drug conspiracy. The crux of his argument appears to be that, as a result of Burke's deficient performance, he was sentenced in violation of his rights under the Sixth Amendment. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.").

It is clear from the record, however, that Cross cannot establish ineffective assistance of counsel on this ground. The undersigned judge presided over Cross's sentencing and resentencing, and has reviewed the transcript of the sentencing and resentencing, Cross's position papers, and Cross's objections to the presentence report. There is no question that Burke provided zealous, effective advocacy on Cross's behalf at sentencing and

resentencing, particularly with regard to the proper application of section 2X3.1 to the facts of this case.  It is clear from the record that Burke's performance was reasonable "under prevailing professional norms."  Strickland v. Washington, 466 U.S. 668, 688 (1984).  And it is also readily apparent to the court that Burke's performance was not deficient with respect to his representation of Cross on appeal.  See United States v. Cross, 371 F.3d 176, 179-82 (4th Cir. 2004).  At Cross's original sentencing, Burke persuaded this court to adopt an interpretation of the sentencing guidelines that was favorable to Cross.  See id. at 179-80.  As a result, Cross received a sentence of 100 months on each count, to be served concurrently.  See id. at 177.  When the government appealed Cross's sentence, it was clearly an objectively reasonable strategy for Burke to defend the ruling of this court, rather than advance new arguments, such as those described by Cross.[11]  Because it is

---

[11]The court notes that the government certainly could have adduced evidence at Cross's sentencing to establish that the underlying drug conspiracy involved about 23.1 kilograms of cocaine base.  Indeed, at that point in time, Goodman had already been sentenced, and his sentence reflected the fact that precisely that quantity of cocaine base was involved in the drug conspiracy.  See Cross, 371 F.3d at 178 (explaining that "the district court attributed slightly over 23 kilograms of crack cocaine to Goodman as a result of his involvement in the conspiracy").  In support of his arguments, Cross repeatedly refers to the fact that the larger quantity of drugs was not attributed to Goodman until after Cross was indicted.  But that fact avails Cross nothing, as it would not have prevented the government from adducing evidence of the larger drug quantity at Cross's sentencing.

The court also notes that at the time of Cross's sentencing and first appeal, it would have been futile to argue that the Sixth Amendment precluded a sentence enhancement based on facts found by

41

clear from the record that Burke's performance was not deficient, Cross is not entitled to relief on this ground of his claim.

Second, Cross alleges that Burke caused Cross to be sentenced as a career criminal.  Cross explains that on May 1, 1990, he was brought before the Norfolk Circuit Court on a charge of intent to distribute cocaine.  Cross further explains that pursuant to a plea agreement, the charge was reduced to accommodation possession.  The plea agreement allegedly stated that a charge of accommodation possession was classified the same under Virginia law as a charge of simple possession.  Cross's presentence report lists the conviction against Cross for this offense as accommodation possession.  Cross argues that Burke erred in failing to bring this matter to the court's attention at sentencing.

Under section 4B1.1 of the sentencing guidelines, a defendant

---

a judge, rather than a jury.  See United States v. Kinter, 235 F.3d 192, 199 (4th Cir. 2000) (explaining that the majority opinion in Apprendi prohibited only judicial findings of fact that increased the defendant's sentence beyond the statutory maximum); 18 U.S.C. § 1512(b)(1) (establishing a maximum sentence of ten years); 18 U.S.C. § 1513(b)(2) (same); see also Apprendi, 530 U.S. at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."); United States v. Hammoud, 381 F.3d 316, 345 (4th Cir. 2004) (explaining that "[w]e have previously held that the rule of Apprendi does not affect the application of the [sentencing] guidelines," and that "[n]othing in [Blakely v. Washington, 542 U.S. 296 (2004)] requires us to abandon our prior holding"). Furthermore, there was no Sixth Amendment error at resentencing because this court "merely applied the guideline as mandated and made no factual determinations regarding drug quantity in doing so."  United States v. Cross, 159 F. App'x 484, 486 (4th Cir. 2005).

may not be classified as a career offender unless he has at least two prior felony convictions of either a crime of violence or a controlled substance offense.   Cross's presentence report listed felony convictions for malicious wounding and accommodation possession.   A conviction for simple possession is not a "controlled substance offense." United States v. Felder, 96 F. App'x 108, 111 (4th Cir. 2004).   But a conviction for accommodation possession qualifies as such an offense.   United States v. Johnson, 43 F. App'x 711, 711-12 (4th Cir. 2002).

Under Virginia law, the offense of simple possession of cocaine and the offense of accommodation possession are Class 5 felonies.   See VA. CODE ANN. §§ 18.2-248(D), 18.2-250(A)(a), 54.1-3448.   Thus, it is certainly possible that Cross's plea agreement indicated that his conviction for accommodation possession would fall under the same classification as a conviction for simple possession.   But the fact remains that Cross was convicted for accommodation possession, not simple possession.   And a conviction for accommodation possession constitutes a controlled substance offense.   See Johnson, 43 F. App'x at 711-12.   Cross, therefore, had two prior felony convictions of either a crime of violence or a controlled substance offense, and was properly classified as a career offender.   See U.S. SENTENCING GUIDELINES MANUAL

§ 4B1.1 (2001).[12]  Accordingly, any failure of Burke to raise this issue did not prejudice Cross, and Cross cannot establish ineffective assistance of counsel on this ground.

Third, Cross argues that Joseph Winston ("Winston"), the attorney who represented Cross during his second appeal, was ineffective based on Winston's failure to argue that Burke's performance was deficient at Cross's sentencing.  But in light of the fact that Burke's performance was not deficient, Winston's failure to raise the issue obviously did not result in prejudice to Cross.  Cross's claim is **DENIED** as to this ground.

Fourth, Cross argues that Winston's performance was deficient because he was resentenced in a manner that violated his rights under the Sixth Amendment, and that this court treated the sentencing guidelines as mandatory during his resentencing.  It is not clear in what manner Winston's performance was deficient, because he appears to have argued these issues on appeal.  See Cross, 159 F. App'x at 485-86.  In any event, because the Fourth Circuit has already rejected Cross's substantive arguments, this court declines to revisit them here.  See id. at 486.  It is clear that any failure of Winston to raise these issues did not result in prejudice to Cross.

Fifth, and finally, Cross contends that Winston's performance

_____

[12]Cross does not challenge the implicit conclusion in his presentence report that a malicious wounding is a crime of violence.

was deficient in that Winston failed to argue that Cross was resentenced in violation of the applicable statutory maximum sentence. The crux of Cross's argument appears to be that this court should have imposed concurrent sentences, rather than consecutive sentences. The basis for this contention is not clear.

Cross was convicted on two counts, and each count had a statutory maximum sentence of ten years. <u>See</u> 18 U.S.C. § 1512(b)(1); 18 U.S.C. § 1513(b)(2). In resentencing Cross, the court determined that the appropriate sentencing guidelines range was 168 to 210 months, and that a reasonable and appropriate sentence was 168 months. Then, to impose a total punishment of 168 months, the court imposed consecutive sentences of 120 months and 48 months on Count One and Count Two, respectively. In doing so, the court properly applied section 5G1.2 of the sentencing guidelines. <u>See</u> U.S. SENTENCING GUIDELINES MANUAL § 5G1.2(d) (2001) ("If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."); <u>see, e.g.</u>, <u>United States v. Maggi</u>, 44 F.3d 478, 481 (7th Cir. 1995). Because the court did not err in imposing consecutive sentences, the

failure of Winston to raise this issue did not prejudice Cross.[13]
Accordingly, Cross cannot establish ineffective assistance on this
ground of his claim.[14]

## B.  Actual Innocence

In this part of his motion, Cross again alleges that his
sentence should not have reflected the 23.1 kilograms of cocaine
base involved in the drug conspiracy underlying his offenses.
Cross repeats, almost verbatim, the allegations set forth in his
ineffective assistance of counsel claim.  He relies primarily on
the fact that no mention of the quantity of drugs involved in the
drug conspiracy appeared in his indictment.

The Fourth Circuit has explained, however, that "[a]ctual
innocence applies in non-capital sentencing only in the context of
eligibility for application of a career offender or other habitual
offender guideline provision."  United States v. Mikalajunas, 186
F.3d 490, 495 (4th Cir. 1999).  Cross challenges his sentence, but
his arguments do not relate to the application of any such

---

[13]The court notes that Cross's allegations do not describe a
violation of his rights under the Fifth Amendment.  See United
States v. Maggitt, 784 F.2d 590, 599 (5th Cir. 1986) (holding that
the indictment of a defendant for witness tampering and retaliating
against a witness based on the same conduct did not violate the
double jeopardy and due process clauses of the Fifth Amendment).

[14]The court has rejected many of the individual grounds of
Cross's ineffective assistance of counsel claim by concluding that
it is clear from the record that the purported error described by
Cross did not result in prejudice to him.  The court notes that the
court has also concluded that the sum of these purported errors did
not result in prejudice to Cross.

provision.  Accordingly, his claim of actual innocence is **DENIED**.[15]

## C.  Prosecutorial Misconduct

Cross claims that prosecutorial misconduct occurred during his trial.  He alleges several different grounds for his claim, and the court addresses each in turn.

### 1.   Reference To Gregory Cooper During Cross-Examination

Cross alleges that prosecutorial misconduct occurred when the government asked several of Cross's character witnesses whether they knew that Cross had shot Gregory Cooper in 1992.  Cross explains that the government did not inform him prior to trial that it intended to mention Cooper during cross-examination.  Thus, Cross did not have an opportunity to exercise his peremptory challenges to exclude any witnesses who may have known Cooper.

To establish prosecutorial misconduct, the defendant must show that "the prosecutor's remarks or conduct were improper," and that "such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial."  United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002).  The following factors are relevant in evaluating the issue of prejudice:

> (1) the degree to which the prosecutor's remarks had a tendency to mislead the jury and to prejudice the defendant; (2) whether the remarks were isolated or

---

[15]The court notes that Cross has not described any new evidence that would show he was actually innocent with respect to the sentencing issue.  In fact, it is clear that the underlying drug conspiracy involved 23.1 kilograms of cocaine base.  See supra note 11.

extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the defendant; (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters; (5) whether the prosecutor's remarks were invited by improper conduct of defense counsel; and (6) whether curative instructions were given to the jury.

Id. at 186.

In this case, Cross's claim fails because the government's questioning of Cross's character witnesses about the Cooper shooting was proper. See supra Part III.A.1 (explaining that the government's questioning was permissible under the Federal Rules of Evidence); see also United States v. Haueter, No. 86-3217, 1988 WL 7414, *4-5 (6th Cir. Feb. 3, 1988) (rejecting a defendant's argument that the mention of a particular name by a prosecutor during cross-examination of a witness was so explosive as to constitute prosecutorial misconduct, because the questioning of the witness was consistent with the requirements of the Federal Rules of Evidence). In any event, the remarks were isolated, and the government introduced competent proof of defendant's guilt. Also, the jury was instructed not to consider Cross's prior acts as evidence that Cross was guilty of the instant offenses. See Jury Instr. Tr. at 14. In addition, there is no indication that the references to Cooper actually resulted in prejudice to Cross. Rather, Cross is merely speculating that some jurors may have known Cooper. See supra Part III.A.1. In other words, it is clear from

the record that there was no prosecutorial misconduct.[16]  Cross is not entitled to relief on this ground of his prosecutorial misconduct claim.

### 2.   **Failure To Disclose Agreement Not To Prosecute**

Cross alleges that the government failed to disclose to Cross the fact that Parker and Investigator Young promised not to prosecute Lewis in exchange for cooperation.  Cross does not provide any of the following additional information: (1) the approximate date on which the promise was made; (2) when and how Cross discovered that such a promise had been made; (3) whether the alleged cooperation related to the prosecution of Cross or the prosecution of Goodman; (4) whether anyone other than Parker and Investigator Young knew of this promise; and (5) why Cross's counsel did not simply ask Lewis, Parker, or Investigator Young at trial whether such a promise had been made.  In other words, this part of Cross's claim is merely a vague, conclusory assertion, and the court need not hold an evidentiary hearing to consider it further.  See Raines v. United States, 423 F.2d 526, 531 (4th Cir. 1970).  Cross's prosecutorial misconduct claim is **DENIED** as to this ground.

---

[16]The court notes that the government has not argued that Cross procedurally defaulted this claim.  In light of the fact that it is clear there was no prosecutorial misconduct, the court does not address the issue any further.

### 3.    Failure To Disclose A Report Relating To Lewis

Cross also claims that the government withheld a report made by state Investigator Young based on a conversation he had with Lewis.  Cross explains that the government produced a second report, which was made from this initial report, but not the initial report itself.  Cross alleges that the initial report indicates that Lewis stated to Investigator Young that Cross had approached her at her apartment a few days after July 11, 2002. Cross explains that this report conflicted with Lewis's testimony at trial, because, according to Cross, Lewis testified at the trial that she was away from her home in the days following July 11, 2002.  Cross contends that by withholding this initial report, the government deprived him of evidence that Burke could have used to impeach Lewis.  He argues that the initial report shows not only that Lewis perjured herself, but also that the government knew her testimony was false when offered at his trial.    The Supreme Court has explained that "there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor."  United States v. Agurs, 427 U.S. 97, 106 (1976). When a specific and relevant request is made, the failure to make any response is seldom excusable.  Id.  On the other hand, when no request or merely a general request is made, "there are situations in which evidence is obviously of such substantial value to the defense that elementary fairness requires it to be disclosed even

50

without a specific request." <u>Id.</u> at 110.  The failure to disclose information favorable to the defense under such circumstances does not constitute prosecutorial misconduct unless "the omitted evidence creates a reasonable doubt that did not otherwise exist." <u>Id.</u> at 112.

In this case, Cross made only a general request for information from the government.  <u>See</u> Order (Jan. 3, 2003).  The court assumes for the sake of argument that the initial report exists, contains the information described by Cross, and was withheld by the government.  Thus, the court must consider whether the initial report would have created a reasonable doubt that did not otherwise exist.  <u>See</u> <u>Agurs</u>, 427 U.S. at 106.[17]

At Cross's trial, Lewis testified that following the events of July 11, 2002, she spent one night in a shelter, and the next night at her sister's house.  <u>See</u> Trial Tr. at 26-27.  The prosecution then asked her where she stayed at <u>night</u> over the next three to four weeks.  <u>Id.</u> at 27.  She responded that she stayed at Simms's house.  <u>Id.</u>  The prosecution then asked what she did with herself there.  <u>Id.</u>  Lewis responded that she "[j]ust stayed there."  <u>Id.</u>

Importantly, Lewis did not state that she never left Simms's house to visit her apartment during the daytime.  And when Lewis

---

[17]The court notes that the government has asserted that it produced a copy of Lewis's statement to the police.  Gov't Resp. at 13.  The government has not addressed Cross's apparent contention that two reports were created.

stated that she just stayed at Simms's house, it is clear that she was merely providing a vague answer to a vague question.[18]   Under the circumstances, Lewis's statement that she just stayed at Simms's house obviously did not foreclose the possibility that she had returned to her apartment at some point during the time she stayed with Simms.   It would have been natural for Lewis to attempt to return to her apartment at some point to collect personal items. Thus, it is clear from the record that Lewis's purported prior statement that Cross approached her at her apartment a few days after July 11, 2002, would not have been inconsistent with her trial testimony.   For that reason, the initial report would have had little, if any, value as impeachment evidence.   In other words, it is clear from the record that the initial report, assuming one existed,[19] would not have created a reasonable doubt as to Cross's guilt that did not otherwise exist.[20]   Accordingly, Cross is not

---

[18]The court notes that Cross's allegations are, like the testimony in question, vague.   He has not explained how he knows what the initial report contains or that one actually existed.   <u>See</u> <u>supra</u> note 17.

[19]<u>See</u> <u>supra</u> notes 17 and 18.

[20]Of course, the report also would not have established that the government knowingly used false testimony.   The Supreme Court has explained that "a conviction obtained by the knowing use of perjured testimony . . . must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."   <u>See</u> <u>Agurs</u>, 427 U.S. at 103-04.   It is clear that even if Cross's allegations regarding the initial report are true, the report would not have established that Lewis testified falsely.

entitled to relief on this ground of his prosecutorial misconduct claim.

### 4.   Withholding Of Identity Of Police Vehicle

Cross alleges that the government withheld the identification of the vehicle that transported Lewis to the police station on July 11, 2002.  As in his ineffective assistance of counsel claim, Cross contends that the vehicle in question was Investigator Young's personal vehicle, an unmarked Ford with tinted windows.  He explains that the false testimony of Investigator Young led the jury to mistakenly believe that Cross saw Lewis on July 11, 2002, sitting in the front passenger seat of a marked police vehicle. Cross argues that the government intentionally created a false impression by withholding the identification of the vehicle and allowing Investigator Young to testify that Cross had a clear view of Lewis sitting in the front seat of the vehicle.

It is entirely unclear what is the evidentiary basis for Cross's arguments.  Cross mentions that his family discovered the true nature of the vehicle in question, but he does not indicate how, when, or from whom they learned of the relevant facts.  Cross refers to a picture of Investigator Young's personal vehicle that he had in his possession at one time, but he neither alleges that the prosecution had such a picture in their possession nor explains how the prosecution could have recognized that Lewis was traveling in Investigator Young's personal vehicle on the date in question.

It is clear that Cross's claim consists of nothing more than vague and conclusory assertions.  Cross's prosecutorial misconduct claim is, therefore, **DENIED** as to this ground, and the court declines to consider the matter further at an evidentiary hearing.  See Raines, 423 F.2d at 531; see also Unites States v. Roane, 378 F.3d 382, 401 (4th Cir. 2004) (explaining that "conclusory accusations that the Government should have known that a statement was false, without more, do not warrant an evidentiary hearing").

### 5.   **Withholding Of Interview Material**

In this part of his § 2255 motion, Cross reiterates his argument that federal jurisdiction was lacking in this case.  His allegations are vague and conclusory.  He alleges that the government withheld an interview of Lewis conducted by federal Agent Parker on July 12, 2002, but he does not explain how the contents of this interview would have assisted him in convincing this court that federal jurisdiction was lacking.  Instead, he simply rehashes arguments made elsewhere in his petition.  For the reasons previously stated in this Opinion, federal jurisdiction was not lacking in this case.  See supra Part III.A.8.  Accordingly, Cross's prosecutorial misconduct claim is **DENIED** with respect to this ground.

### D.  **False Testimony By Government Witnesses**

Finally, Cross alleges that the government offered false testimony that surprised Cross.  He contends that Lewis testified

falsely when she stated that she never knew Cross while living with her mother, Thomasine Lewis, in a house on Carolina Highway.  Cross also contends that Thomasine Lewis testified falsely on cross-examination when she stated that she never spoke with Cross until Lewis started dating Goodman, apart from seeing Cross at her place of employment.

However, even assuming for the sake of argument that Lewis and Thomasine Lewis testified falsely regarding these matters, Cross does not allege, and there is no indication in the record, that the government knew or reasonably should have known that the testimony being offered was false.  Accordingly, Cross's claim is **DENIED**. See <u>Roane</u>, 378 F.3d at 401.

## IV.  Conclusion

For the reasons stated above, Cross's motion to amend is **GRANTED**.  Cross's § 2255 motion is **DENIED**, Cross's motion for an evidentiary hearing, as amended, is **DENIED**, and his motion to appoint counsel for that hearing is **DENIED** as moot.  Cross is **ADVISED** that he may appeal from this Opinion and final order by forwarding a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia 23510.  The written notice must be received by the Clerk within sixty (60) days from the date of this Opinion.

The Clerk is **DIRECTED** to forward a copy of this Opinion to Cross, to Walter B. Dalton, Charles Russell Burke, and Joseph

Winston (all former counsel for Cross), and to the Assistant United

States Attorney.

      **IT IS SO ORDERED.**


_____/s/_____
                                                       Rebecca Beach Smith

Norfolk, Virginia

January 12, 2007